IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Criminal Action No. 09-cr-00056-PAB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

7.  KELVIN DURAN,

    Defendant.

## ORDER AFFIRMING DETENTION ORDER

This matter comes before the Court on defendant's Motion for District Court Review [Docket No. 94] of Magistrate Judge Michael Watanabe's Order of Detention [Docket No. 58], entered on March 4, 2009.  The United States has not filed a response.

Defendant does not specify the basis for his motion.  However, it seems apparent that the defendant seeks review under 18 U.S.C. § 3145(a) and (b).  These sections permit a defendant to file a motion for revocation of a detention order if a person has been detained by a magistrate judge.

### Requirements for Detention Under the Bail Reform Act

Under the Bail Reform Act, a defendant may be detained pending trial if a judicial officer finds "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."  18 U.S.C. § 3142(e).  The findings of fact used to justify a determination

that no condition or combination of conditions will reasonably assure the safety of any other person and the community must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f).

In deciding whether there are conditions of release that would assure the appearance of the defendant and the safety of the community, the judicial officer must consider the following factors: (1) the nature and circumstances of the offense; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the danger to any person or the community if the defendant were released.  18 U.S.C. § 3142(g).

## Background

Count One of the indictment names the defendant, among others, and charges a conspiracy to distribute 500 grams or more of both cocaine and methamphetamine. This count carries a maximum sentence of life imprisonment and, therefore, pursuant to 18 U.S.C. § 3142(e)(3), carries a presumption of pretrial detention.  A defendant, however, may rebut this presumption.  The only other substantive count that names the defendant is Count Twenty-Three, which charges the defendant with a wire count.

At the conclusion of the testimony offered at the detention hearing, the magistrate judge made four findings based on the evidence.  First, he found that the defendant was a flight risk.  Second, he found that the defendant was a danger to the community.  Third, he found that the defendant failed to rebut the statutory presumption of detention.  Fourth, he found that there was no condition or combination of conditions of release that would assure Mr. Duran's presence as well as the safety of the community.

The defendant's motion for review is based principally on the following arguments: (a) Defendant was only on 88 of the 10,000 telephone calls; (b) such calls contained no suggestion the defendant was involved in drug dealing; and (c) only five calls out of 88 suggested any criminal activity at all. Motion for Review at 2. The standard for the district court's review of a magistrate judge's detention order under Section 3145(a) is de novo. *United States v. Cisneros*, 328 F.3d 610, 616 n.1 (10th Cir. 2003).

## Information Regarding the MS-13 Gang

At the beginning of the detention hearing, the defendant stipulated to the admission of testimony on the MS-13 gang from FBI Agent Beth Boggess, who testified earlier that day at the detention hearing of Gerardo Lopez in 09-cr-00055-PAB, a related case. Neither the government nor the defendant has attached a copy of such testimony and therefore the Court has not considered it.

Mike Prince, an Aurora Police Officer assigned to the Metro Gang Task Force, testified at the detention hearing that the defendant is a member of the MS-13 Normandie Locos gang in Denver, Colorado. Officer Prince testified that the defendant has a tattoo on his head symbolizing a clique of the MS-13 gang. He testified that the defendant has "MS" tattooed on his back and head, indicating his gang affiliation. Officer Prince also identified the defendant in two photographs displaying MS-13 gang signs along with other MS-13 gang members.

**Intercepted Telephone Calls**

Officer Prince testified that 88 telephone calls intercepted pursuant to the wire tap authorization involved the defendant. These calls took place between December 2007 and May 2008. Mr. Duran's telephone was not targeted; rather, the defendant was recorded when he called targeted phone numbers. Officer Prince testified about several telephone calls. On December 20, 2007, the defendant called a ranking member of the MS-13 street gang in Denver and talked about a third party who wanted to purchase methamphetamine. On February 4, 2008, MS-13 gang member Gerardo Lopez called the defendant and talked about MS-13 gang member Milton Garcia-Espinoza having brought narcotics with him. On February 6, 2008, the defendant made a call to an unknown male using Gerardo Lopez's telephone. Officer Prince testified that this conversation involved Garcia-Espinoza having a supply of narcotics and asking the unidentified male about getting narcotics in order to compare quality and pricing. On February 25, 2008, Gerardo Lopez had a conversation with defendant about sending money to the MS-13 leadership in the country of El Salvador.

Officer Prince admitted on cross-examination that he did not observe the defendant with controlled substances or excessive amounts of money.

**Information from Confidential Informants**

Officer Prince also testified about information regarding the defendant that he received from previously reliable confidential informants. The informant known as CS8 told Officer Prince that he or she had regularly purchased large quantities of methamphetamine from the defendant and Garcia-Sanchez. CS8 also said that he or

she would frequently sell stolen firearms, sometimes as payments for drugs.  CS8 said that Garcia-Sanchez and the defendant both had an arsenal of firearms.  Another confidential informant, known as CS6, told Officer Prince that he or she bought methamphetamine from the defendant and Garcia-Sanchez.  Confidential informants known as CS5 and CS7 separately told Officer Prince that, during a time when Garcia-Sanchez was sick, the defendant operated Garcia-Sanchez's drug distribution enterprise.

## Ties to El Salvador

The Pretrial Services report prepared by the Probation Department noted that the defendant has family ties to El Salvador and that the defendant has traveled to El Salvador in the past without a passport.

## Conclusion

Upon de novo review of the record of the March 4, 2009 detention hearing, the Court finds that the magistrate judge's detention order is supported by clear and convincing findings of fact.

Regardless of what percentage of the overall number of intercepted telephone calls the defendant's conversations account for, the evidence at the detention hearing established that the defendant made telephone calls discussing drug transactions.  Although such conversations are subject to interpretation, Officer Prince's interpretation of these conversations was reasonably relied upon by the magistrate judge.  Officer Prince had been involved in the investigation of the MS-13 gang in Denver for several years and had an overall understanding of the investigation and of the phone calls

made by other members of the gang.  Officer Prince interpreted the telephone conversations to involve narcotic dealing.  The magistrate judge gave these telephone calls appropriate weight in his detention ruling.

Moreover, the magistrate judge appropriately weighed the evidence regarding statements of confidential informants, who stated that the defendant was heavily involved in drug dealing and possessed many firearms.  Although many of these informants were arguably self-interested, the intercepted phone calls generally corroborated their information.  Given that the magistrate judge found probable cause as to Count One of the indictment, the magistrate judge properly determined that the defendant did not overcome the presumption of detention regarding Count One, despite the testimony from the defendant's wife, Lesley Duran.

Although some of the evidence of defendant's ties to El Salvador was old, recent evidence indicated that the defendant had been involved in sending money to the MS-13 leadership in El Salvador, indicating that he has current ties to that country.  That, combined with the nature and seriousness of the charges pending against him, his use of aliases, and the earlier failure to appear, supports the magistrate judge's conclusion that the defendant also constitutes a flight risk.

Wherefore, defendant Kelvin Duran's Motion for District Court Review [Docket No. 94] is granted in part and denied in part.  The Court grants that part of the motion

requesting that the Court review the magistrate judge's detention order, but denies that part of the motion asking the Court to revoke the detention order.

DATED June 23, 2009.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge